UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re

ARKA P. SENGUPTA,

                              Debtor.
-------------------------------------------------------------------X
742 EVERGREEN TERRACE, LLC,

                              Plaintiff,

        -against-

ARKA P. SENGUPTA,

                              Defendant.
-------------------------------------------------------------------X

Chapter 11

Case No.: 1-21-41053-nhl

Adv. Pro. No.:
1-22-01050-nhl

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, ARKA P. SENGUPTA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P.RULES 9 AND 12(b)(6) AS INCORPORATED <u>BY BANKRUPTCY RULES 7009 and 2012</u>**

Penachio Malara LLP
Counsel for Defendant
245 Main Street
Suite 450
White Plains, NY  10601
(914) 946-2889

1

## PRELIMINARY STATEMENT

Defendant, Arka P. Sengupta (hereinafter "Sengupta", "Defendant" or "Debtor"), submits this memorandum of law in support of his motion (the "Motion") for dismissal of the Complaint filed in this Adversary Proceeding by Plaintiff, 742 Evergreen Terrace, LLC (the "Plaintiff"). For the reasons discussed herein, the Complaint must be dismissed as a matter of law, in accordance with Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). The Plaintiff has failed to establish the elements for denial of dischargeability under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6).

The causes of action set forth in the Complaint are just not plausible on their face. In particular, the Defendant's alleged statement that the Defendant stated that the advance of about $70,000.00 that Asia TV would make to his company Constant Beta "could cover the $66,000 that would need to be returned" is simply an insufficient basis to deny the dischargeability of his debt to the Plaintiff. So are the assertions by Plaintiff that Defendant had never intended to repay Plaintiff's loan in full. There is also no showing that Sengupta had made fraudulent transfers of money to his mother, Bijoya Sengupta and his sister, Payel Sengupta to conceal assets. Moreover, the Plaintiff could have sought standing to investigate avoidability of transfers or moved for the appointment of a trustee.

## BRIEF FACTS

For purposes of the Motion, the facts pleaded in the Complaint will be accepted as true.

A copy of the Complaint is annexed to the Declaration of Anne Penachio in support of the motion to dismiss and the Court is respectfully referred thereto. The facts are summarized herein. References are made to the Complaint as Cmplt at ¶.

The claims asserted by Plaintiff against Defendant emanate from a loan that was made to Constant Beta Motion Picture Corp. ("Constant Beta") rather than to the Defendant.

On November 9, 2018, Constant Beta executed a note in the amount of $60,000.00 to the Plaintiff. Constant Beta did not repay the obligation in its entirety.

On November 15, 2019, the Plaintiff commenced an action against Constant Beta and the Defendant in the Supreme Court of the State of New York, New York County (the "State Court Action"). The State Court Action was assigned Index No. 656817/2019.

In connection with the loan from Plaintiff to Constant Beta, the Defendant allegedly made numerous representations and omissions of facts including that:

(1)  The Defendant emailed Plaintiff in 2018 to ask them to consider making a loan to finance completion of a film "Break through the Crowd." Constant Beta would repay the loan with the payment of $70,000.00 from Asia TV. (Cmplt at ¶ 10 -11)

(2)  Just days earlier, Constant Beta had been served with a lawsuit commenced by Robin Humbert who alleged that Constant Beta failed to pay her for work performed. (Cmplt at ¶ 13)

(3)  Constant Beta owed Michon, Inc. over $200,000.00. (Cmplt at ¶ 13)

(4)  The documentary film "First to Do It", which was to serve as collateral for the loan, would be "the biggest doc release of 2019" when the release was cancelled when funding fee through." (Cmplt at ¶ 16)

(5)  On July 18, 2018, the Pennsylvania Court of Common Pleas had entered a default judgment against the Defendant for an unpaid debt of over $20,000.00." (Cmplt at ¶ 18)

Plaintiff further states that "unaware of Sengupta's and Constant Beta's recent history of defaulting on various debts and lawsuits, and relying on Sengupta's assurances that principal and interest on the loan would be timely repaid, [the Plaintiff] agreed to execute [the Note]" (Cmplt at ¶ 20)

The Plaintiff extended the loan period when Constant Beta was unable to pay the entire balance due. (Cmplt at ¶ 22 -31). In connection with the extension, the Defendant made the following representations:

(1) Constant Beta was about to receive a distribution from "First to Do It" when in fact the Defendant knew that no distribution was forthcoming (Cmplt at ¶ 23-24); and

(2) Constant Beta was in the process of finalizing an option agreement with Gatorade on a soccer documentary which according to Plaintiff was not true;

The Defendant failed to respond to the State Court Action. On March 25, 2021, default judgment was entered against the Defendant in the State Court Action in the amount of $106,713.93. (Cmplt at ¶ 32 -39)

According to the Plaintiff, the Defendant caused the following transfers to be made from either himself or Constant Beta to entities controlled by family members which are avoidable. (Cmplt at ¶ 40 -44)

(1) $11,700.00 to his sister and $5,700.00 to his mother in 2021.

(2) $247,000.00 to Omkara Group, an entity controlled by a cousin in 2019.

Plaintiff alleges that such transfers were made to conceal Constant Beta's assets.

Finally, the Plaintiff alleges that the Court should "pierce the corporate veil" and hold him personally liable for such transfers.

Notably, there the Compliant is devoid of any allegations that:

(1) The Defendant submitted false financial statements regarding it in writing other than unspecified emails

(2) The Defendant personally guarantied the obligations of Constant Beta

(3) The Plaintiff performed any due diligence with respect to statements made by the Defendant

4

(4) The Plaintiff ever requested financial information regarding the financial condition of the Defendant or Constant Beta (such as tax returns)

(5) The Plaintiff requested information regarding "First to Do It" which served as collateral for the loan.

## ISSUES PRESENTED

1. Should the Count I of the Complaint for relief under 11 U.S.C. § 523(a)(2)(A) be dismissed?

2. Should the Count I of the Complaint for relief under 11 U.S.C. § 523(a)(2)(B) be dismissed?

3. Should the Count I of the Complaint for relief under 11 U.S.C. § 523(a)(6) be dismissed?

The answers to the foregoing questions are 'No."

## DISCUSSION

### THE COMPLAINT DOES NOT STATE A CAUSE OF ACTION FOR FRAUD AGAINST THE DEBTOR

Fed. R. Civ. P.12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, provides that a motion to dismiss may be granted if the complaint fails "to state a claim upon which relief can be granted." A complaint is sufficient as long as it provides the opposing party with notice of claims against it and includes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

5

*Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

However, factual allegations "must be enough to raise the right to relief above the speculative level" and "should plausibly suggest that the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint may be found implausible in the context of a Rule 12(b)(6) motion to dismiss if its allegations "are too conclusory or the complaint fails to include essential facts about the elements of a claim*." In re Neale*, 440 B.R. 510, 518 (Bankr. W.D. Wis. 2010).

Furthermore, Fed. R. Civ. P. 9(b), which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009, states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Thus, a complaint seeking a judgment of nondischargeability under section 523 due to a debtor's fraud must meet the heightened pleading requirement of Rule 9(b), *In re Glunk*, 343 B.R. 754,757 (Bankr. E.D. Pa. 2006) (citing *In re Kroen*, 280 B.R.347, 350 n. 2 (Bankr. D.N.J. 2002)). See Neale, 440 B.R. 510 at 518 (stating that "Rule 9(b) particularity is 'the who, what, when, where, and how: the first paragraph of any newspaper story'").

Discharge exceptions are strictly construed in favor of dischargeability. *See In re Peters*, 133 B.R. 291 (S.D.N.Y. 1991), aff'd 964 F.2d 166 (2d Cir. 1992). Moreover, sections 523(a)(2)(A) and 523(a)(2)(B) are mutually exclusive. See *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr.S.D.N.Y. 1999). While subsection (a)(2)(A) specifically provides that it is inapplicable to statements regarding a debtor's financial condition, subsection (a)(2)(B) covers only statements regarding the debtor's financial condition. Moreover, only subsection (a)(2)(B) requires that the misstatement be in writing. Thus, if the misrepresentation involves a statement regarding the debtor's or an insider's financial condition, it must be in writing. See *In*

*re Alicea*, 230 B.R. at 500.

## COUNT I OF THE COMPLAINT MUST BE DISMISSED

The Complaint, at Count I, seeks a determination that Plaintiff's Judgment be deemed nondischargeable under §523 (a)(2)(A) of the Bankruptcy Code:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…….

"Although the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate 'proof of false or deceptive conduct, fraudulent intent, and justifiable reliance.'" *In re Altieri*, 2012 Bankr. LEXIS 3843, 2012 WL 3595298 at *2 (citing *In re Neale*, 440 B.R. 510, 521 (Bankr. W.D. Wis. 2010)). Thus, in determining whether the requirements of section 523(a)(2)(A) are satisfied, courts typically require proof that the debtor:

(a) obtained money, property or services;

(b) after falsely representing [or omitting] a material present or past fact;

(c) that the debtor knew at the time was false (or was made with disregard for its truth);

(d) the debtor intended that the plaintiff rely on that statement;

(e) the plaintiff actually relied on that statement and the reliance was justified; and

(f) the plaintiff sustained damages as the proximate result of the false representation.

Plaintiff, in the Complaint, has failed these elements, other than with wholly unsubstantiated statements set forth above which lack the specificity required by Fed. R. Civ. P. 9(b).

Here, it is unclear what the alleged fraudulent statements were that did not relate to

Constant Beta or the Defendant's financial condition. It appears that all statements made by the Defendant relate to financial condition.

Moreover, it is not set forth how such statements were "material." In this regard, it is noteworthy the Plaintiff negotiated a security interest in the 'First to Do It" film which arguably would have rendered any other assets or claims immaterial (See *In re Wong* 291 B.R. 266, 276 (Bankr. S.D.N.Y. 2003) where lender accepted a collateral package which in sum and substance rendered statements immaterial).

Finally, Plaintiff has failed to plead adequately reasonable reliance and proximate cause. In determining whether there has been justifiable reliance, the court is to examine the particular qualities and characteristics of the plaintiff and the circumstances of the particular case. See *Lightner v. Lohn*, 274 B.R. at 550. In evaluating whether a creditor's reliance was reasonable, the following factors should be considered:

(1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices);

(2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by the debtor); and

(3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

See *In re Cohn*, 54 F.3d 1108, 1117 (3d Cir. 1995).

Here, Plaintiff failed to plead any factors which support that there was reasonable

reliance. It is noteworthy that the Plaintiff never requested tax returns or financial statements from the Defendant or Constant Beta. It did not require Constant Beta to provide a financial statement or perform even a cursory "public records" search. Moreover, the Defendant was never asked to guarantee Constant Beta's liability (and thus, the Defendant's financial condition would be irrelevant).

Accordingly, Count I of the Complaint must be dismissed.

## COUNT II OF THE COMPLAINT MUST BE DISMISSED

The Complaint, at Count II, seeks a determination that Plaintiff's Judgment be deemed nondischargeable under §523 (a)(2)(B) of the Bankruptcy Code:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B)

For purposes of the motion, it is presumed that the emails alluded to are statements made in writing.

The "materially false" requirement of 11 U.S.C. § 523(a)(2)(B) connotes more than merely an untrue or erroneous statement. A materially false financial statement is one which is substantially inaccurate. *FDIC v. Reisman (In re Reisman)*, 149 B.R. 31, 37 (Bankr.S.D.N.Y.

1993). To be materially false, a financial statement must be "one which paints a substantially untruthful picture of the Debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Hudson Valley Water Resources, Inc. v. Boice (In re Boice),* 149 B.R. 40, 45 (Bankr.S.D.N.Y. 1992). Here, the Plaintiff's statements are not materially false. Rather, they reflect optimism about the success of "First to Do It."

The reasonable reliance requirement under § 523(a)(2)(B) has two aspects. Not only must the creditor demonstrate reliance upon the false financial statement, but it also must establish that the reliance was reasonable. *Texas Am. Bank, Tyler, N.A. v. Barron (In re Barron)*, 126 B.R. 255, 259 (Bankr.E.D.Tex. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 364 (1977) ("[T]he creditor must not only have relied on a false statement in writing, the reliance must have been reasonable."). [R]easonableness' requires that representations must be found to be of such a character that a reasonably prudent person would rely on them. Such a standard fosters responsible and careful use of solicited financial statements and discourages the `spurious use' of such statements. . . .*National Bank of N. Am. v. Newmark (In re Newmark)*, 20 B.R. 842, 862 (Bankr.E.D.N.Y. 1982) (quoting *Waterbury Community Fed. Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 668-69 n. 1 (Bankr.N.D.N.Y. 1981)).

Here, it is submitted that it is inconceivable that the Plaintiff would have relied on Defendant's statements in extending the loan without performing even a cursory investigation including reviewing the public record. It is noteworthy that the Plaintiff has not plead any special relationship that would suggest trust.

Accordingly, Count II of the Complaint must be dismissed.

## COUNT III OF THE COMPLAINT MUST BE DISMISSED

The Complaint, at Count III, seeks a determination that Plaintiff's Judgment be deemed nondischargeable under §523 (a)(6) of the Bankruptcy Code:

for willful and malicious injury by the Debtor to another entity or to the property of another entity….

In order to satisfy the "willful" requirement under the statute, there must be a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger, 523 U.S. 57, 62-63, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998)*. In particular, the actor must "intend the consequences of an act" rather than merely "the act itself." *Id.* Proof of willfulness requires a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another. *In re Walker*, 43 F.3d 1161 (11th Cir. 1995) states that "a debtor is responsible for willful injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."

Malicious is defines as wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will

Plaintiff has set forth a bald allegations that the payments from Constant Beta or the Debtor to Omkara, his mother and sister were made with willness and malicious intent to deprive Plaintiff of recovery from Constant Beta.

Here, the Plaintiff has not established willfulness or malice. There is simply no showing that the Defendant intentionally and wrongfully transferred or misappropriated any of Constant Beta's assets by re-paying Omkara Group, an entity controlled by the Defendant's cousin and

his mother and sister. Plaintiff has failed to show that the payments by Constant Beta were made with malicious intent to harm the Plaintiff. A breach of contract unaccompanied by tortious conduct . . . does not give rise to a Section 523(a)(6) nondischargeability claim." *In re Picard*, 339 B.R. 542, 554 (Bankr. D. Conn. 2006). Clearly, payments made by the Defendant to his mother and sister are not (which are nominal) and from constant beta to Omkara were not done to willfully and maliciously harm the Plaintiff and do not implicate tortious conduct.

Accordingly, Count III of the Complaint must be dismissed.

## CONCLUSION

The primary purpose of the Bankruptcy Code is to relieve the honest debtor from the weight of oppressive pre-existing indebtedness and to permit him or her a fresh start. Consistent with that doctrine, exceptions to discharge are to be narrowly construed. Plaintiff, in its Complaint, fails to allege the requisite elements of fraud under §§523 (a)(2)(A) and (B) and 523 (a)(6) with the particularity and sufficient detail required by the Federal Rules. The Debtor is therefore entitled to the entry of an order dismissing this Adversary Proceeding, together with such other and further relief as is just under the circumstances.

Dated: White Plains, NY
      August 1, 2022

PENACHIO MALARA, LLP
/s/ Anne Penachio
Anne Penachio, Esq.
245 Main Street, Suite 450
White Plains, NY 10601
(914) 946-2889